UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                  :

IN RE:                               :
                                    :

APPLICATION OF THE CHILDREN'S    :
INVESTMENT FUND FOUNDATION (UK), :
SIR CHRISTOPHER HOHN, and AXON     :
PARTNERS, LP FOR AN ORDER TO TAKE :
DISCOVERY PURSUANT TO 28 U.S.C.     :
§ 1782                                  :
                                    :
                        Applicants.    :
                                    :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/30/2019

18-MC-104 (VSB)

**OPINION & ORDER**

Appearances:

Lawrence Jay Portnoy
Bryan Patrick McArdle
Justin G. Sommers
Lindsay Brooke Schare
Davis Polk & Wardwell LLP
New York, NY
*Counsel for Applicants*

James Evan Berger
King & Spalding LLP
New York, NY
*Counsel for Respondent IREO Management Subsidiary, LLC*

Marlo A. Pecora
Quinn Emanuel
New York, NY
*Counsel for Respondent Steven Wisch*

VERNON S. BRODERICK, United States District Judge:

On March 21, 2018, Applicants The Children's Investment Fund Foundation (UK)

("Children's Fund"), Sir Christopher Hohn, and Axon Partners, LP ("Axon") (together,

"Applicants") initiated this action ex parte by filing an application for an order pursuant to 28

U.S.C. § 1782 authorizing Applicants to take discovery from Respondents Louis Klein, Anurag

Bhargava, Steven Wisch, and IREO Management Subsidiary, LLC ("IREO Subsidiary") (together, "Respondents") for use in connection with criminal complaints filed in India and related investigations, proceedings underway in Mauritius and, at the time of the Application, contemplated in the United Kingdom ("Application"). (Doc. 1.) On May 14, 2018, Applicants submitted a letter with revisions to the Application ("May 14 Letter"). (Doc. 8.) On May 18, 2018, I entered an Order approving the Application as revised by the May 14 Letter ("Approving Order"). (Doc. 11.)

There are several motions before me: (1) Respondent IREO Subsidiary's motion to vacate the Approving Order, quash the document and deposition subpoenas served on Respondent IREO Subsidiary, and for a protective order against the deposition subpoena, (Doc. 14); (2) Respondent Wisch's motion to quash the document and deposition subpoenas issued to him and for a protective order against the deposition subpoena, (Doc. 45); (3) Applicants' letter motion to compel Respondent IREO Subsidiary's compliance with the subpoenas and for attorneys' fees, (Doc. 23); (4) Applicants' letter motion for leave to file a motion to compel Respondent Wisch's compliance with the subpoenas and for attorneys' fees, (Doc. 51); and (5) Respondent IREO Subsidiary's motion for an order to stay discovery granted by the Approving Order, (Doc. 28).

For the reasons stated below, Respondent IREO Subsidiary's motion to vacate the Approving Order, quash the subpoenas, and for a protective order is DENIED; Respondent Wisch's motion to quash the document and deposition subpoenas and for a protective order against the deposition subpoena is DENIED; Applicants' motion to compel and motion for leave to file a motion to compel are DENIED without prejudice to refile if Respondents IREO Subsidiary and Wisch fail to comply with the subpoenas; Applicants' motion for attorneys' fees

and motion for leave to file a motion for attorneys' fees are DENIED as moot without prejudice to refile if Respondents IREO Subsidiary and Wisch fail to comply with the subpoenas; and Respondent IREO Subsidiary's motion to stay discovery is GRANTED IN PART and DENIED IN PART.

## I.   **Background**

Applicants are all investors in a group of Mauritius private-equity funds that were formed to invest in real estate in India beginning around 2004 ("IREO Funds").  (Appl. Mem. 3; *see also* Livingstone Decl. ¶ 4.)[1]  The IREO Funds are managed by multiple entities affiliated with IREO, an Indian consortium comprised of over 100 companies.  (Roxborough Decl. ¶ 5.)[2] According to Applicants, Lalit Goyal founded and acts as the de facto manager of the IREO Funds, exercising total control over all aspects of IREO's business in India.  (*Id.* ¶ 6.)

Beginning in 2015, investors in the IREO Funds, including Applicant Children's Fund, began to voice concerns over mismanagement of the IREO Funds and lack of transparency.  (*Id.* ¶ 8.)  Applicants filed several actions in Mauritius seeking to enforce their rights as investors, which the IREO Funds opposed.  (3/21/18 Portnoy Decl. Exs. K–L.)  Applicants claim that they have also become aware of at least three specific frauds perpetrated by Goyal, which allegedly resulted in the misappropriation of over $150 million in investor assets.  (Appl. Mem. 5; Applicants 8/13/18 Opp.)[3]  First, Applicants claim that IREO Grace Realtech Private Ltd.

---

[1] "Appl. Mem." refers to the Memorandum of Law in Support of the Application of the Children's Investment Fund Foundation (UK), Sir Christopher Hohn, and Axon Partners, LP for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, dated March 21, 2018.  (Doc. 5.)  "Livingstone Decl." refers to the Declaration of Hal Livingstone, dated March 20, 2018, (Doc. 6-9), which is attached as Exhibit J to the Declaration of Lawrence Portnoy, dated March 21, 2018 ("3/21/18 Portnoy Decl."), (Doc. 6).

[2] "Roxborough Decl." refers to the Declaration of Iain Roxborough, dated March 20, 2018, (Doc. 6-10), which is attached as Exhibit J to the 3/21/18 Portnoy Declaration.

[3] "Applicants 8/13/18 Opp." refers to Applicants' Memorandum of Law in Opposition to Respondent IREO Management Subsidiary, LLC's Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, to Quash Subpoenas, and for a Protective Order, dated August 3, 2018.  (Doc. 19.)

("IREO Grace"), an IREO Indian operating subsidiary, used investor assets to purchase land rights from a group of four land-owning companies that were owned or controlled by Goyal or his associates. (*See* Doc. 8, at 1–2; Roxborough Decl. ¶ 15.) Goyal allegedly directed IREO Grace to acquire land and development licenses in Gurgaon for approximately $85 million more than what was commercially justified. (*See* Doc. 8, at 1–2; Roxborough Decl. ¶ 15.)

Second, Applicants claim that IREO Private Ltd. ("IREO Private"), at the direction of Goyal, advanced approximately $62 million to certain third-party "broker companies" in Bhiwadi, India, using investor assets. (Doc. 8, at 2.; Roxborough Decl. ¶ 16.) IREO Private allegedly received nothing in return for this advance except development rights to certain land in Bhiwadi. (Doc. 8, at 2.; Roxborough Decl. ¶ 16.) However, according to Applicants, several years after its acquisition, the land remained undeveloped and, within four years, the value of the land was almost entirely written off by IREO Private. (Doc. 8, at 2; Roxborough Decl. ¶ 16.)

Third, Applicants claim that Goyal, through the use of his personal majority ownership interests in several land-owning companies, continues to misappropriate valuable IREO assets for his personal benefit, to the detriment of the IREO Funds and their investors. (Chandhoke Decl. ¶ 10.)[4]

Applicants seek documentary and testimonial evidence for use in foreign proceedings related to the alleged mismanagement and suspected frauds involving the IREO Funds in Mauritius, India, and the United Kingdom (the "Foreign Proceedings"). First, as referenced above, beginning in or about 2015, Applicants and other investors initiated several actions in Mauritius (the "Mauritius Proceedings") to enforce their rights as investors against the IREO

---

[4] "Chandhoke Decl." refers to the Declaration of Harneet Singh Chandhoke, dated August 10, 2018, which is attached as Exhibit A to the Declaration of Lawrence Portnoy, dated August 13, 2018. (Doc. 20.)

Funds.  (*See* 3/21/18 Portnoy Decl. Ex. K; Rajah Decl. ¶ 3.)[5]  These proceedings include an

action to obtain books and records, (*id.*), an action to wind up one of the IREO Funds after its

limited life had expired ("Winding Up Proceeding"), (*see* 3/21/18 Portnoy Decl. Ex. L; Rajah

Decl. ¶ 4), an action to convene a shareholder meeting for one of the IREO Funds to replace

board members, (*see* 3/21/18 Portnoy Decl. Ex. K; Rajah Decl. ¶ 3), and liquidation proceedings

relating to one of the IREO Funds ("Liquidation Proceeding"), (Rajah Decl. ¶ 3).

Second, Applicants Children's Fund and Axon filed a criminal complaint on February 28,

2018 with the New Delhi Police Station in India against the IREO Funds, associated companies,

and their directors/officers, including Goyal.  (Livingstone Decl. ¶ 8.)  The criminal complaint

relates specifically to the first two of the suspected frauds described above.  (*Id.* ¶ 10.)

Applicants Children's Fund and Axon filed a second criminal complaint in India on May 19,

2018, which relates to the third suspected fraud discussed above (the two criminal complaints are

collectively referred to as the "Indian Criminal Proceedings").  (Gupta Mem. ¶ 6.)[6]

Third, Applicant Children's Fund commenced an arbitration on April 6, 2018 in the

London Court of International Arbitration ("LCIA") against one of the IREO Funds, its manager,

and its controlling shareholder pursuant to the dispute resolution clause in the Fund's shareholder

agreement ("London Proceeding").  (*See* Rajah Decl. ¶ 3; Roxborough Decl. ¶¶ 10–16.)  In the

London Proceeding, Applicant Children's Fund alleges claims for breach of contract and breach

of fiduciary duty and requests damages and termination of the fund management agreement.

(Roxborough Decl. ¶ 13.)  The deadline to submit documentary evidence in that proceeding is

---

[5] "Rajah Decl." refers to the Declaration of Abdul Kader Ahmed Rajah, dated July 13, 2018.  (Doc. 16.)

[6] "Gupta Mem." refers to the Memorandum of Amar Gupta, dated July 12, 2018, (Doc. 16-2), which is attached as Exhibit B to the Declaration of Abdul Kader Ahmed Rajah, dated July 13, 2018, (Doc. 16).

March 15, 2019.  (Applicants' Ltr. 1.)[7]

## II.     Procedural History

Applicants submitted the Application ex parte on March 21, 2018.  (Doc. 1.)  After reviewing the Application, I entered an order instructing Applicants to appear for a hearing on May 17, 2018 and to submit a letter to justify the breadth of the discovery sought.  (Doc. 7.) Prior to the hearing, Applicants submitted the May 14 Letter, which significantly narrowed the scope of the discovery they sought from Respondents.  (Doc. 8.)  At the hearing on May 17, 2018, Applicants answered additional questions about the scope of discovery.  After considering Applicants' memorandum of law in support of the initial Application, (Doc. 5), the declaration of Lawrence Portnoy, Esq. in support of the Application and its exhibits, (Doc. 6), the May 14 Letter, (Doc. 8), and arguments made by Applicants at the May 17, 2018 hearing, I granted the Application as revised by the May 14 Letter, authorizing Applicants to take the requested discovery from Respondents, (Doc. 11).

After Applicants served the subpoenas on Respondents, on July 13, 2018, Respondent IREO Subsidiary filed a motion to vacate the Approving Order, quash the subpoenas, and for a protective order against the deposition subpoena.  (Docs. 14–17.)  On August 13, 2018, Applicants filed their opposition to Respondent IREO Subsidiary's motion, (Docs. 19–20), and on August 22, 2018, they filed a motion to compel compliance with the subpoenas, (Doc. 23). On September 3, 2018, Respondent IREO Subsidiary filed:  (1) its reply memorandum in support of its motion to vacate the Approving Order; (2) its opposition to Applicants' motion to compel; and (3) a cross-motion to stay discovery.  (Docs. 27–32.)  Applicants opposed the cross-motion to stay on September 10, 2018, (Doc. 34), and Respondent IREO Subsidiary filed its reply in

---

[7] "Applicants' Ltr." refers to the letter filed by Applicants on December 11, 2018.  (Doc. 44.)

support of the motion to stay on September 12, 2018, (Doc. 36–38).

On November 29, 2018, Applicants and Respondent Wisch submitted a joint letter, informing me that Respondent Wisch also intended to file a motion to quash the subpoenas and for a protective order. (Doc. 42.) Respondent Wisch submitted the motion on December 28, 2018, (Doc. 45), which Applicants opposed on January 4, 2019, (Doc. 51). On the same day, Applicants filed a letter motion for leave to file a motion to compel Respondent Wisch to comply with the subpoenas and for attorneys' fees. (Doc. 51.) Respondent Wisch filed his reply on January 14, 2019. (Doc. 54.)

On December 11, 2018, Applicants filed a request for expedited consideration of all motions pending before me, in light of an approaching March 15, 2019 deadline to submit documentary evidence in one of the proceedings underlying the Application. (Applicants' Ltr.).

### III.    <u>Legal Standard</u>

Section 1782 provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). The statutory requirements are: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Once the statutory requirements are met, "a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004) (quoting *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997)). However, a court's discretion is "not boundless," and must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 84 (quoting *In re Metallgesellschaft*, 121 F.3d at 79). The Supreme Court has identified the following four discretionary factors to aid district courts in determining whether to grant § 1782 applications: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

IV.    **Discussion**

    A.    ***Respondent IREO Subsidiary's Motion to Vacate and to Quash[8]***

    **1. Statutory Requirements**

    a.    <u>Resides in the District</u>

Respondent IREO Subsidiary does not dispute Applicants' representation that

Respondent IREO Subsidiary resides in this district because it "maintains offices at 152 West

57th Street, New York, NY 10019." (Appl. Mem. 10 (citing 3/21/18 Portnoy Decl. Ex. V).) The

first statutory requirement of § 1782 is therefore met. *Brandi-Dohrn*, 673 F.3d at 80; *see also W.*

*Bulk Carriers KS v. Centauri Shipping Ltd.,* No. 11 Civ. 5952(RJS), 2013 WL 1385212, at *3

(S.D.N.Y. Mar. 11, 2013) (noting that party conceded argument by failing to address it in

opposition brief).

    b.    <u>For Use in a Proceeding Before a Foreign Tribunal</u>

Respondent IREO Subsidiary argues that none of the Foreign Proceedings described in

the Application satisfies the "for use" requirement of § 1782. (Resp't IREO Sub. Mem. 7–17.)[9]

First, Respondent IREO Subsidiary argues that "private, commercial arbitrations do not

constitute 'proceeding[s] in a foreign or international tribunal,'" and therefore the LCIA does not

satisfy the "for use" requirement. (*Id.* at 12 (quoting *In re Finserve Grp. Ltd.*, No. 4:11-mc-

2044-RBH, 2011 WL 5024264, at *1–2 (D.S.C. Oct. 20, 2011).) The question of whether a

private, foreign arbitration panel satisfies the "for use" requirement of § 1782 is unsettled in this

Circuit. In 1999, the Second Circuit examined the legislative history of § 1782 and found that

---

[8] Respondent Wisch "adopts and incorporates by reference the arguments made by [Respondent IREO Subsidiary] as to why: (1) the Applicants fail to satisfy the statutory requirements of § 1782; and (2) the *Intel* discretionary factors weigh against granting the Application." (Doc. 46, at 12–13.)

[9] "Resp't IREO Sub. Mem." refers to Respondent IREO Subsidiary's Memorandum of Law in Support of Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, to Quash Subpoenas, and for a Protective Order, dated July 13, 2018. (Doc. 15.)

"Congress did not intend for that statute to apply to an arbitral body established by private parties." *Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 191 (2d Cir. 1999) ("*NBC*"). However, five years after *NBC*, when considering whether the Commission of the European Communities satisfied the "for use" requirement, the Supreme Court also examined the legislative history of § 1782. *Intel*, 542 U.S. at 257–59. In *Intel*, the Supreme Court cited an article by Professor Hans Smit,[10] including the text, "[T]he term 'tribunal' includes investigating magistrates, administrative and *arbitral tribunals*, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Id.* at 258 (quoting Smit, International Litigation 1026–1027, and nn. 71, 73) (providing support for the assertion that Congress understood that its revision of § 1782—which replaced the terms "any judicial proceeding" with "a proceeding in a foreign or international tribunal"—was intended to "provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad" (internal quotation marks omitted)).

Since *Intel*, the Second Circuit has not considered whether a private arbitration tribunal satisfies the "for use" requirement, so Respondent IREO Subsidiary argues that the holding of *NBC* is still good law. (Resp't IREO Sub. Mem. 15.) Some courts in other circuits have indeed been skeptical about whether private arbitration tribunals are covered by § 1782, and some have even found that they are not. *See*, *e.g.*, *Finserve*, 2011 WL 5024264, at *2 (having "very serious concerns with finding that private arbitration organizations are 'foreign tribunals' under [§ 1782]"); *In Re Application of Gov't of Lao People's Democratic Republic*, No. 1:15-MC-00018, 2016 WL 1389764, at *5 (D. N. Mar. I. Apr. 7, 2016) ("[I]f Congress had meant to broaden §

---

[10] The Second Circuit has described Smit as "a chief architect" of § 1782. *See Euromepa S.A.* v. *R. Esmerian, Inc.* 51 F.3d 1095, 1099 (2d Cir. 1995).

1782 to include private arbitral bodies, it would have done so expressly.").  Other courts, however, have held that the Supreme Court's *Intel* decision altered the legal landscape, making private arbitration tribunals covered by § 1782.  *See, e.g.*, *In re Owl Shipping, LLC*, No. 14-5655 (AET)(DEA), 2014 WL 5320192, at *2 (D.N.J. Oct. 17, 2014); *In re Application of Babcock Borsig AG*, 583 F. Supp. 2d 233, 238 (D. Mass. 2008).  In *In re Roz Trading Ltd.*, the court explained why the Second Circuit's decision in *NBC* no longer applies:

> The Supreme Court's decision in *Intel* undermines the reasoning of *[NBC].*  The *Intel* court reviewed the legislative history of § 1782, and found a legislative intent to broaden the scope of the term "tribunal."  It noted specifically that "[t]he legislative history of the 1964 revision . . . reflects Congress' recognition that judicial assistance would be available whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, *or other nature.*"  The Supreme Court's interpretation and application of the legislative history contradicts the interpretations and applications of the Second and Fifth Circuits, which incorrectly concluded that Congress intended to limit the availability of judicial assistance under § 1782 to governmental—that is criminal, civil, or administrative—proceedings.

469 F. Supp. 2d 1221, 1227 (N.D. Ga. 2006) (internal citation omitted).  The *Roz Trading* court concluded that a private arbitration panel "must necessarily be considered a 'tribunal' under § 1782(a)."  *Id.* at 1225.

To my knowledge, only one district court in this circuit has considered whether a private arbitration tribunal satisfies the "for use" requirement after *Intel*.  *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521–22 (S.D.N.Y. 2016).  In that case, Judge Marrero concluded that the London Maritime Arbitration Association—a private arbitration panel—was "a 'foreign tribunal' within the domain of Section 1782."  *Id.* at 522.  Respondent IREO Subsidiary argues that I should ignore Judge Marrero's conclusion because he did not sufficiently explain the basis for his conclusion.  (Resp't IREO Sub. Mem. 15.)  I disagree. Judge Marrero adequately explained his reasoning, and I join Judge Marrero in finding that a

private arbitration tribunal is a "proceeding in a foreign or international tribunal" for the purposes of § 1782; therefore, the LCIA satisfies this statutory requirement.  *See* 28 U.S.C. § 1782.

Respondent IREO Subsidiary also argues that the Indian Criminal Proceedings do not satisfy the "for use" requirement because "an adjudicative proceeding is [not] within reasonable contemplation in India."  (Resp't IREO Sub. Mem. 7; *see also In re Wilhelm*, 470 F. Supp. 2d 409, 411 (S.D.N.Y. 2007) (granting a § 1782 application related to a criminal investigation where the court could conclude that an "'adjudicative proceeding,' which is to say a 'formal accusation,' against the individuals in question lies within 'reasonable contemplation'").)  Respondent IREO Subsidiary contrasts the Indian Criminal Proceedings with other criminal proceedings in which § 1782 applications have been granted because there is no "formal accusation . . . at hand."  (Resp't IREO Sub. Mem. 8 (relying on *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 461 (2d Cir. 2015).)  This argument is fatally flawed.

IREO Subsidiary's argument ignores the plain language of the statute itself, which specifically includes "criminal investigations conducted before formal accusation" in the definition of "a proceeding before a foreign or international tribunal."  28 U.S.C. § 1782(a); *see also In re Imanagement Servs., Ltd.*, No. Misc. 05-89(FB), 2005 WL 1959702, at *2 (E.D.N.Y. Aug. 16, 2005) (referring to the Second Circuit's "admonition against reading additional barriers into the plain language of § 1782) (citing *In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993)).  To determine whether criminal proceedings are sufficiently ripe to satisfy the requirements of § 1782, the Second Circuit has considered whether applicants have "a practical ability to inject the requested information into [the] foreign proceeding."  *In re Accent Delight*

*Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).  Applicants allege that, under the Indian Code of

Criminal Procedure, 1973, both Children's Fund and Axon, "as the criminal complainants, have

. . . the right *to require* that their allegations and evidence be considered by . . . a Magistrate . . .

and a reviewing court."  (Applicants 8/13/18 Opp. 10 (citing Chandhoke Decl. ¶¶ 26–31, 44–45);

*see also In re Berlamont*, No. 14–mc–00190 (JSR), 2014 WL 3893953, at *1 (S.D.N.Y. Aug. 4,

2014) ("A complaining witness's presentation of evidence to an investigating magistrate satisfies

the "for use" prong of §1782.") (citing *Intel*, 542 U.S. at 257–58).)  Respondent IREO Subsidiary

does not seriously rebut Applicants' assertion of their ability under Indian law to present

evidence to a magistrate and/or a reviewing court in India.  (*See* Resp't IREO Sub. Mem. 7–9.)

Because Applicants Children's Fund and Axon have the practical ability to submit

evidence to the authorities and courts involved in the Indian Criminal Proceedings, I find that

they satisfy the "for use" requirement of § 1782.

Finally, Respondent IREO Subsidiary argues that the Mauritius proceedings do not

satisfy the "for use" requirement of § 1782.  I disagree.  Respondent IREO Subsidiary focuses its

argument on two of the proceedings—the Winding Up Proceeding and the Liquidation

Proceeding.  (Resp't IREO Sub. Mem. 9–12.)  It does not dispute that the other Mauritian

Proceedings satisfy the "for use" requirement of § 1782, and therefore concedes that they do.

*See W. Bulk Carriers*, 2013 WL 1385212, at *3 (noting that arguments not addressed in

opposition brief are conceded).

Respondent IREO Subsidiary argues that because the "discovery sought by Applicants is

far broader than the limited issue before the Mauritian court" in the Winding Up Proceeding, that

proceeding does not satisfy the "for use" requirement.  (Resp't IREO Sub. Mem. 10.)  This

argument conflates the second statutory requirement of § 1782 with the fourth *Intel* discretionary

factor, which directs courts to consider whether a request is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264–65; *see also In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1042–43 (N.D. Cal. 2016) (finding that requests are "unduly intrusive and burdensome" under *Intel* "where they are not narrowly tailored"). For purposes of the statutory requirement, Applicants need only make a de minimis showing that the requested discovery is "for use" in the proceeding, so long as the proceeding falls within the scope of § 1782. *See In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (collecting cases for the proposition that "the burden imposed upon an applicant is *de minimis*"). I find that Applicants have made a de minimis showing that the discovery sought is for use in the Winding Up Proceeding, and therefore the proceeding satisfies the "for use" requirement of § 1782.

Respondent IREO Subsidiary asserts that the Liquidation Proceeding does not satisfy the "for use" requirement because "the liquidator is not a judicial officer or tribunal, and does not adjudicate any substantive claims by creditors or any matters relating to the company." (Resp't IREO Sub. Mem. 11.) Respondent IREO Subsidiary does not identify any authority specifically stating that liquidation proceedings—in Mauritius or elsewhere—do not satisfy the statutory requirements of § 1782. Indeed, IREO Subsidiary concedes that the liquidator "exercises powers of a[n] . . . administrative, investigative or quasi-judicial capacity in nature," (Salajee Decl. ¶ 11)[11], and the Supreme Court held in *Intel* "that discovery under [§] 1782 is available for use in 'administrative and quasi-judicial proceedings' as well as strictly 'judicial' proceedings," *see Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14 Civ. 9997(CM), 2015 WL 3439220, at *887 (S.D.N.Y. Feb. 5, 2015) (quoting *Intel*, 542 U.S. at 258); *see also In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769, at *3–4 (S.D.N.Y. June 3, 2005) (finding that, where a

---

[11] "Salajee Decl." refers to the Declaration of Zubeida Salajee, dated July 6, 2018. (Doc. 17.)

liquidation proceeding does more than merely "enforce prior judgments," it satisfies the "for use" requirement of § 1782) (relying on *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996), and *In the Matter of Euromepa,* 154 F.3d 24, 27 (2d Cir. 1998)). Respondent IREO Subsidiary's claim that the liquidator does not have "adjudicative powers," (Resp't IREO Sub. Mem. 11), is contradicted by its admission that "a *decision* of the liquidator" is subject to judicial review, (Salajee Decl. ¶ 11 (emphasis added)). Accordingly, I find that the Liquidation Proceeding satisfies the "for use" requirement of § 1782.

### c. Interested Person

Respondent IREO Subsidiary challenges whether each Applicant is an interested person with respect to the various Foreign Proceedings. (*See* Resp't IREO Sub. Mem. 9, 12, 16.) Respondent IREO Subsidiary concedes, and I agree, that where an Applicant is a party to a proceeding, that Applicant satisfies the "interested person" requirement of § 1782. *See In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (finding that the language of § 1782 is clear that a person who is a party to a foreign proceeding satisfies the "interested person" requirement). Therefore, I find that:

> i. Applicant Children's Fund is an interested person with regard to the London Proceeding, (Roxborough Decl. ¶ 10), and the application in Mauritius to "convene a special meeting of one of the IREO Fund I Family Funds in order to remove certain directors and appoint new ones," (*see* Applicants 8/13/18 Opp. 4 (citing Rajahbalee Decl. ¶ 23));

> ii. Applicant Hohn is an interested person with regard to the Winding Up Proceeding, (Rajahbalee Decl. ¶ 13), the Liquidation Proceeding, (*id.* ¶ 14), and the "contempt of court proceedings against IREO's purported liquidator and IREO management seeking, in part, an order restraining IREO management from disposing of any of the assets in IREO Fund I, Ltd. during the course of the Winding-up Proceeding," (*see* Applicants 8/13/18 Opp. 4 (citing Rajahbalee Decl. ¶¶ 20–21)); and,

> iii. Applicant Axon is an interested person with regard to the proceeding "to prevent a capital call issued by IREO Fund II, Ltd., to stop payment of management

fees to IREO management, and for access to company records generally available to shareholders under Mauritius law," (*see* Applicants 8/13/18 Opp. 4 (citing Rajahbalee Decl. ¶¶ 5–6)).

Similarly, a complainant in a criminal investigation satisfies the "interested person" requirement of § 1782. *See In re Application for an Order Pursuant to 28 U.S.C. § 1782*, 773 F.3d 456, 457–58 (2d Cir. 2014). Accordingly, I find that Applicants Children's Fund and Axon are "interested persons" with regard to the Indian Criminal Proceedings. (Chandhoke Decl. ¶¶ 4, 10, Exs. A, C.)

In making these findings, I do not make any specific findings to the contrary: i.e., that any particular Applicant is *not* an interested person with regard to any Foreign Proceeding. For example, although status as a party or criminal complainant is sufficient to satisfy the "interested person" requirement of § 1782, it is by no means necessary. *See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) ("[A]n established *right* to provide evidence . . . may be sufficient to make an otherwise stranger to [a] proceeding an 'interested person.'"). The parties have not briefed the "interested person" question on a proceeding-by-proceeding basis, and therefore I do not make determinations as to each Applicant for each Foreign Proceeding. Therefore, the Applicants and Respondents IREO Subsidiary and Wisch are instructed to meet and confer to discuss, for each Foreign Proceeding,[12] whether Applicants who are not parties or complainants in the proceeding qualify as an interested person for the purposes of § 1782, and to submit a joint stipulation reflecting the results of the conference.

---

[12] To the extent that a country has multiple proceedings (i.e., India and Mauritius), the parties shall discuss each individual proceeding to determine which Applicants satisfy the "interested person" requirement of § 1782.

## 2. Discretionary Factors

I consider the discretionary factors "in light of the twin aims of the statute:  providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84 (internal quotation marks omitted).  Applicants have made a persuasive showing that the first three *Intel* discretionary factors weigh in favor of granting the Application. (*See* Appl. Mem. 15–19.)  Respondent IREO Subsidiary did not address and therefore concedes that these factors weigh in favor of granting the Application.  *See W. Bulk Carriers*, 2013 WL 1385212, at *3 (noting that arguments not addressed in opposition brief are conceded).

Respondent IREO Subsidiary argues that the Application should be denied because the fourth *Intel* discretionary factor—"whether the request is 'unduly intrusive or burdensome,'" *Mees*, 793 F.3d at 298—weighs against granting the Application for two reasons.  (Resp't IREO Sub. Mem. 17–25.)  First, IREO Subsidiary argues that the discovery sought is "not in any manner tailored to the purposes for which [Applicants] claim to need that information," and the subpoenas are therefore "a massive dragnet."  (Resp't IREO Sub. Mem. 17–18.)  Respondent IREO Subsidiary discusses why certain discovery requests may not apply to certain proceedings, but notably they fail to specifically state why any of the requests is not relevant to the London Proceeding.  (*See id.* at 17–25.)  As discussed below, all of the discovery sought is for use in the London Proceeding, and Respondent IREO Subsidiary's failure to specifically state why the requests are not narrowly tailored to the purposes of that proceeding weighs in Applicants' favor for purposes of the fourth discretionary factor.  *See infra* Part IV.D.  Moreover, IREO Subsidiary does not demonstrate how each request is irrelevant or overbroad.  *See Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012) ("A party resisting discovery has the burden of showing

specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." (internal quotation marks omitted)); *see also In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (granting a § 1782 application where respondent failed to "present particularized evidence in their briefing that production . . . would be unduly burdensome or costly, such as an affidavit of a person with knowledge of the record keeping system explaining in detail the basis of the objection").[13] Finally, in response to my questions about the breadth of the initial discovery requests, (*see* Doc. 7), Applicants significantly narrowed the scope of the discovery sought to ensure that it is proportional to the needs of the case, (*see* Doc. 8).

Second, Respondent IREO Subsidiary argues that the fourth discretionary factor weighs against granting the Application because the discovery sought for the Indian Criminal Proceedings and Mauritian Proceedings "could be obtained through more efficient means." (Resp't IREO Sub. Mem. 21.) Specifically, IREO Subsidiary argues that authorities in India and Mauritius have the power to compel the production of documents, even documents that are located in New York. (*Id.* at 22–23.) However, the Second Circuit has clearly explained that parties who seek discovery pursuant to § 1782 are not required to "seek information through the foreign or international tribunal before requesting discovery from the district court." *Euromepa*,

---

[13] Respondent IREO Mgmt. did submit an affidavit from attorney Abdul Kader Ahmed Rajah, stating that compliance with the subpoenas, generally, would require the review of "approximately 100 boxes of hard copy documents" and "14 years' worth of electronic emails and documents from approximately 15 to 20 custodians." (Rajah Decl. ¶ 21.) However, this self-serving, conclusory statement fails to meet Respondent's burden, because it does not state how *each request* is unduly burdensome. *See Michanczyk v. Metro. Life Ins. Co.*, No. 3:05CV1903(RNC), 2007 WL 926911, at *2 (D. Conn. Mar. 26, 2007) ("Under well-settled law, the party resisting production bears the responsibility of establishing undue burden.").

51 F.3d at 1098 (internal quotation marks omitted).  Accordingly, I find that the fourth discretionary factor weighs in favor of granting the Application.

### 3.  Conclusion

For the reasons described above and in Part IV.D, I find that all of the discovery requested by Applicants is for use in the London Proceeding, that the LCIA meets the statutory "for use" requirement of § 1782, and that, at a minimum, Applicant Children's Fund is an interested person with regard to that proceeding.  Accordingly, Respondent IREO Subsidiary's motion to vacate the Approving Order, quash the document and deposition subpoenas served on Respondent IREO Subsidiary, and for a protective order against the deposition subpoena is DENIED.  Respondent IREO Subsidiary is instructed to comply with the subpoena issued and produce the discovery requested, including deposition testimony, to Applicant Children's Fund.

### B.  *Respondent Wisch's Motion to Quash*

Respondent Wisch "adopt[ed,] . . . incorporate[d] by reference" and elaborated on Respondent IREO Subsidiary's arguments that the Applicants had failed to meet the statutory requirements of § 1782 and that the *Intel* discretionary factors weighed against granting the Application.  (Resp't Wisch Mem. 12–14.)  As discussed above, I have already found IREO Subsidiary's arguments unpersuasive.  *See supra* Part IV.A.  Wisch's supplemental arguments fair no better, and I find them to be unpersuasive for the same reasons.  Respondent Wisch also does not address Applicants' persuasive showing that the first three *Intel* discretionary factors weigh in favor of granting the Application, (Appl. Mem. 15–19), and therefore he concedes that they do.  *See W. Bulk Carriers*, 2013 WL 1385212, at *3.

Wisch argues that the fourth discretionary factor weighs against granting the Application, because the discovery requests are unduly burdensome and intrusive as they pertain to him.

(Resp't Wisch Mem. 14–18.)  He identifies several considerations that I should weigh when conducting the "undue burden" analysis.  As a preliminary matter, he argues that the analysis should be conducted in light of his minimal involvement with the IREO Funds.  (*See* Resp't Wisch Mem. 6 (asserting that he served only in "limited advisory roles"); Wisch Decl. ¶ 4.)[14] However, Applicants contest the accuracy of this characterization of Respondent Wisch's involvement in the IREO Funds, which is one of the topics Applicants seek to explore through deposition testimony.  (*See* Applicants 1/4/19 Opp. 5–8; *see also* 1/4/19 Portnoy Decl. Ex. A, at 3 (identifying Respondent Wisch as a "co-founder of IREO and India Equity Partners").)[15]

Similarly, Wisch contends that, as a non-party to the Foreign Proceedings, he is "entitled to consideration regarding expense and inconvenience."  (Resp't Wisch Mem. 18.)  His status as a non-party warrants consideration under Rule 26, *see Cohen v. City of N.Y.*, No. 05 Civ. 6780(RJS)(JCF), 2010 WL 1837782, at *3 (S.D.N.Y May 6, 2010) (discussing non-party burden under Rule 26 not in context of § 1782), but I must balance that consideration against the first *Intel* discretionary factor, under which his status as a non-party weighs in favor of granting the discovery in the context of a § 1782 application, *see Intel*, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *see also In re Application of Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F. Supp. 3d 512, 516 (S.D.N.Y. 2015) (noting that where "the person from whom

---

[14] "Wisch Decl." refers to the Declaration of Steven J. Wisch, dated December 28, 2018.  (Doc. 47.)

[15] "Applicants 1/4/19 Opp." refers to Applicant's Memorandum of Law in Opposition to Respondent Steven J. Wisch's Motion to Quash Subpoenas and for a Protective Order, dated January 4, 2019.  (Doc. 49.)  "1/4/19 Portnoy Decl." refers to the Supplemental Declaration of Lawrence Portnoy, dated January 4, 2019.  (Doc. 50.)

discovery is sought is not a participant in the foreign proceeding, [this factor] militates in favor of granting the request" (internal quotation marks omitted)).

Respondent Wisch argues that the discovery requests are "'cumulative or duplicative' of those served on the other Respondents." (Resp't Wisch Mem. 16 (citing Fed. R. Civ. P. 26(b)(2)(C)); *see also In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) (concluding that § 1782 applications may be denied or limited under Rule 26(c)).) He asserts that the requests are duplicative because he is "unlikely to have any documents or information that cannot more conveniently be garnered from . . . the IREO entities which are parties" in the Foreign Proceedings. (Resp't Wisch Mem. 16 (citing *In re Application of OOO Promnefstroy*, No. M. 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009).) However, Wisch provides no evidence to support this assertion, he does not describe with any particularity the documents that are allegedly in both his possession and the possession of a party to one of the Foreign Proceedings, and he does not identify which particular party might have those documents. *See Pegoraro*, 281 F.R.D. at 128–29. These types of conclusory statements and self-serving speculation cannot form the basis of a Rule 26 objection.

Wisch also argues that the requests are unduly burdensome because he "has already expended substantial time and resources preparing a witness statement." (Resp't Wisch Mem. 15.) However, the correspondence between counsel for Respondent Wisch and for Applicants during the negotiations surrounding the draft witness statement indicates that both parties clearly contemplated that if the parties did "not reach agreement on a statement," Applicants may "elect to proceed" with formal discovery. (*See* Pecora Decl. Ex. 1.) Nonetheless, Wisch asserts that the requests are unduly burdensome because, having already produced the witness statement, he "has no additional information to provide . . . and requiring [him] to now prepare for and sit for a

deposition would . . . impose significant additional expense and unwarranted burden." (Resp't Wisch Mem. 15–16.) As an initial matter, his argument that he has no additional information strains credulity and is inconsistent with his assertion that requiring him to produce documents would be unduly burdensome. First, his argument suggests that his draft witness statement contains all of the information that is contained in the documents being sought; I find this assertion to at best be a gross exaggeration. Second, the argument is inconsistent because at the core of his argument of burden is the tacit acknowledgement that he is in possession of the requested documents, and that those documents contain information. In addition, the law is clear that parties are "ordinarily entitled to test a potential witness's claim that he has no relevant knowledge." *In re Application of Operacion y Supervision de Hoteles, S.A. de C.V. for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No. 14 Misc. 82(PGG), 2015 WL 82007, at *8 (S.D.N.Y. Jan. 6, 2015). Respondent Wisch does not identify any authority in this district for the proposition that drafting a witness statement somehow immunizes a third party from deposition. In his reply, he identifies a single opinion in which a party's submission of sworn declarations demonstrating "limited knowledge of the matters that [were] the subject of the underlying litigation." (*See* Resp't Wisch's Reply 7–8 (quoting *Pizzuti v. Nashville Hosp. Capital, LLC*, No. 2:18-mc-0040, 2018 WL 5303061, at *4–5 (S.D. Ohio Oct. 25, 2018).)[16] Here, however, unlike in *Pizutti*, there is nothing in the record—other than conclusory and self-serving statements—demonstrating Wisch's "limited knowledge of the matters" at issue in the Foreign Proceedings. *See id.* Indeed, as discussed above, the parties dispute the nature of Wisch's role in the founding, management, and oversight of the IREO Funds.

---

[16] "Resp't Wisch's Reply" refers to Respondent Steven J. Wisch's Reply Memorandum of Law in Further Support of Motion to Quash Subpoenas and for a Protective Order 7–8, dated January 14, 2019. (Doc. 54.)

Finally, Wisch describes the heavy burden that compliance with the document subpoenas would purportedly impose on him. He asserts that his IREO-related physical documents are stored in multiple locations and are comingled with other, unrelated files. (Wisch Decl. ¶ 17.) He further asserts that reviewing his electronic files would require him to upload 238 gigabytes of data—potentially millions of pages of documents—to a document reviewing platform. (*Id.*) Reviewing all of Respondent Wisch's physical and electronic files may indeed impose a significant burden, but such a burden does not ordinarily mandate that a subpoena be quashed. Rather, Applicants and Respondent Wisch should meet and confer to develop a discovery protocol to govern the search for and protection of documents, including a protocol for the search and production of electronic documents. I hold in abeyance any decision regarding which party will bear the costs of this production, pending further clarity—with the benefit of discovery— regarding the nature of Respondent Wisch's role in the IREO Funds.

On balance, and in light of the "twin aims" of § 1782, I find that the discretionary factors weigh in favor of granting the Application. Accordingly, Respondent Wisch's motion to quash the subpoenas and for a protective order is DENIED.

### C.    *Motion to Compel and for Attorneys' Fees*[17]

The Local Rules of the United States District Court for the Southern District of New York require a party to request an informal conference with the Court prior to filing a motion under Federal Rules of Civil Procedure 26 through 37. *See* L.R. 37.2. Rule 3 of my own Individual Rules & Practices in Civil Cases requires parties to bring discovery disputes to my attention "in a single letter, jointly composed, not to exceed five pages." Applicants characterize

---

[17] In this section, I consider Applicants' motion to compel Respondent IREO Mgmt.'s compliance with the subpoenas and for attorneys' fees, (Doc. 23), and Applicants' letter motion for leave to file a motion to compel Respondent Wisch's compliance with the subpoenas and for attorneys' fees, (Doc. 51).

the parties' dispute about whether the Application satisfies the requirements of § 1782 as a discovery dispute. (Doc. 23, at 1.). They argue that Respondent IREO Subsidiary's "efforts to shirk its discovery obligations" and its failure to follow the procedures set forth in Local Rule 37.2 and my Individual Rule 3 are proper grounds for an order compelling them to comply with the subpoenas. (*Id.* at 2). They also argue that Respondent Wisch has "delayed and sought multiple extensions of time to respond" to the subpoenas served on him. (Doc. 51, at 2.) These arguments miss the mark and fail to address the interplay between the Federal Rules and § 1782. First, but for Applicants' request to submit the Application ex parte, Respondents IREO and Wisch would have had an opportunity to challenge the legality of the Application itself before I entered the Approving Order. Respondent IREO Subsidiary's motion to vacate and to quash and Respondent Wisch's motion to quash challenge the validity of the Approving Order not just the contours of the requested discovery under the Federal Rules, and therefore the motions are properly characterized as having been brought pursuant to § 1782, not only "under [Federal] Rules [of Civil Procedure] 26 through 37." *See* L.R. 37.2. For the same reasons, my Individual Rule 3 does not apply to this dispute. Accordingly, Applicants' request that I enter an order compelling Respondent IREO Subsidiary to comply with the subpoenas, and Applicants' motion for leave to file a motion for an order compelling Respondent Wisch to comply with the subpoenas are DENIED without prejudice to refile the appropriate motions if Respondents IREO and Wisch fail to comply with the subpoenas. Applicant's motion for attorneys' fees and motion for leave to file a motion for attorneys' fees under Federal Rule of Civil Procedure 37(a)(5) are accordingly DENIED as moot.

### D. Motion to Stay

Respondent IREO Subsidiary seeks a partial six-month stay of discovery because the two criminal proceedings in India "may . . . be dismissed shortly, perhaps within the next six months," and because one of the proceedings in Mauritius "is likely to be dismissed on grounds of jurisdiction." (Resp't IREO Sub.'s Reply 10.)[18]

As an initial matter, I will follow other courts in this district and decline to engage in speculation about how any of the Foreign Proceedings may be resolved. *See Euromepa*, 51 F.3d at 1099–1100 (stating that it is "unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law" because § 1782 does not "condone speculative forays in legal territories unfamiliar to federal judges" and "[s]uch a costly time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute"); *In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK), 2018 WL 3392882, at *5 (S.D.N.Y July 12, 2018) (noting that "[t]his Court should not address" arguments that ask the "Court to consider the merits of the foreign proceeding and determine whether the petitioners are likely to prove their damages in that case"); *In re Application of 000 Promnefstroy for an Order to Conduct Discovery for use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 793 (S.D.N.Y. 2015) (declining to address the issue of standing in a Dutch court and holding that it is "not within the Court's purview to adjudge the scope, relevance, and precedential effect of Dutch cases on later Dutch proceedings"). Furthermore, Respondent IREO Subsidiary does not specifically identify *which* discovery

---

[18] "Resp't IREO Sub.'s Reply" refers to Respondent IREO Mgmt.'s Reply Memorandum of Law in Support of Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, to Quash Subpoenas, and for a Protective Order, and Memorandum of Law in Support of Cross-Motion for a Stay, filed on September 3, 2018. (Doc. 29.)

requests it proposes should be stayed. Even if they had, Applicants state that "*all* of the requested discovery is for use in the [London Proceeding] and in the other Mauritius actions." (Applicants 9/10/18 Opp. 2; *see also* Applicants Mem. 11; *id.* at 13 n.6 (alleging that "IREO management has intermingled assets of various IREO Funds; discovery thus must extend to all of the IREO Funds' investments even though the [London] Proceeding will relate specifically to a particular Fund"); Roxborough Decl. ¶¶ 11–17).[19] Respondent IREO Subsidiary confusingly attempts to disprove the assertion that all discovery requests are for use in the London Proceeding by describing documents that are not necessary or proportionate for use in two of the *Mauritius* Proceedings. (*See* Resp't IREO Sub.'s Reply 1–2.) Because Respondent IREO Subsidiary declined to squarely address Applicants' argument related to the use of the requested documents in the London Proceeding, I find that all of the discovery sought is "for use" in that proceeding.

To the extent that I granted the Application, Respondent IREO Subsidiary also requested that I "permit discovery only for the Applicant which is a party to the proceeding forming the basis the Court's grant of discovery." (Resp't IREO Sub. Mem. 25.) As discussed in Part IV.A.1.b, all of the proceedings meet the "for use" requirement of § 1782. However, as discussed in Part IV.A.1.c, with the exception of the findings I made above, I do not have sufficient information to evaluate whether each Applicant is an "interested person" with regard to each of the Foreign Proceedings. I also do not have sufficient information before me to determine which discovery requests pertain to each of the Foreign Proceedings (except the London Proceeding). However, I do find that each Applicant is only entitled to documents

---

[19] "Applicants 9/10/18 Opp." Refers to Applicants' Memorandum of Law in Opposition to Respondent IREO Mgmt. Management Subsidiary, LLC's Cross Motion for a Stay, filed on September 10, 2018. (Doc. 34.)

produced pursuant to requests that are for use in a proceeding to which the Applicant is an interested person.

Accordingly, Respondent IREO Subsidiary's motion to stay is GRANTED IN PART and DENIED IN PART. Applicants and Respondents IREO Subsidiary and Wisch are instructed to meet and confer to discuss which discovery requests relate to each Foreign Proceeding,[20] and to submit a joint stipulation and a proposed protective order reflecting the results of the conference. Discovery is only stayed as to Applicants Hohn and Axon, pending the outcome of the parties' conference. Because I have already found that all of the discovery requests are for use in the London Proceeding, Respondent IREO Subsidiary's motion to stay is DENIED as to Applicant Children's Fund.

### V.     Conclusion

For the foregoing reasons, Respondent IREO Subsidiary's motion to vacate the Approving Order, quash the subpoenas, and for a protective order is DENIED; Respondent Wisch's motion to quash the subpoenas and for a protective order is DENIED; Applicants' motion to compel and motion for leave to file a motion to compel are DENIED without prejudice to refile if Respondents IREO and Wisch fail to comply with the subpoenas; Applicants' motion for attorneys' fees and motion for leave to file a motion for attorneys' fees are DENIED as moot; and Respondent IREO Subsidiary's motion to stay discovery is GRANTED IN PART and DENIED IN PART. Accordingly, it is hereby:

ORDERED that Applicants, Respondent IREO Subsidiary, and Respondent Wisch shall meet and confer to discuss:  (1) which Applicant is an "interested person" under § 1782 in each

---

[20] To the extent that a country has multiple proceedings (i.e., India and Mauritius), the parties shall discuss each individual proceeding and determine which discovery requests pertain to that proceeding.

Foreign Proceeding; (2) which discovery requests relate to each Foreign Proceeding; and (3) a discovery protocol to govern the search for and protection of documents, including electronically stored documents. Within one week of the entry of this order, the parties shall submit a joint stipulation and a proposed protective order reflecting the results of the conference. If the parties fail to come to agreement regarding each Applicant vis-à-vis each Foreign Proceeding, they shall instead submit a joint letter of no more than five (5) pages clearly stating the areas of agreement and disagreement, and stating each party's position with regard to the areas of disagreement; and

IT IS FURTHER ORDERED that Respondents IREO Subsidiary and Wisch shall begin responding immediately to the subpoenas issued in connection with the London Proceeding by Applicant Children's Fund no later than February 19, 2019.

The Clerk of Court is directed to terminate the open motions at Documents 14, 23, 28, 45, and 51.

SO ORDERED.

Dated: January 30, 2019
       New York, New York

Vernon S. Broderick
United States District Judge